# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PHILLIP SINGFIELD,

          Petitioner,

vs.

WARDEN RICHARD A. BOWEN JR.,

          Respondent.

CASE NO. 5:19-CV-02558-JG

JUDGE JAMES GWIN

MAGISTRATE JUDGE DARRELL A. CLAY

**REPORT AND RECOMMENDATION**

On October 31, 2019, Petitioner Phillip Singfield, a prisoner in state custody, filed a Petition through counsel seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On November 1, 2019, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation. (Non-document entry of Nov. 1, 2019). Respondent Richard A. Bowen, Jr., in his official capacity as warden of the Ohio State Penitentiary (hereinafter "the State"), filed a Return of Writ (ECF #4) on December 29, 2019; Mr. Singfield filed a Traverse on February 11, 2020 (ECF #7). On May 25, 2021, pursuant to General Order 2021-06, this case was reassigned to me. (Non-document entry of May 25, 2021). The District Court has jurisdiction over the Petition under § 2254(a).

For the reasons discussed below, I recommend the Petition be **DISMISSED** as untimely and defaulted. In the alternative, I recommend the Petition be **DENIED** on its merits. I further recommend the District Court **DENY** Mr. Singfield a certificate of appealability (COA).

1

FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530.

The Ninth District Court of Appeals summarized the case as follows:

At approximately 1:30 a.m. on July 26, 2008, Staci Smith and her cousin, Natea Proctor, drove to a bar on Newton Street.

...

[At trial,] Smith testified that she and Proctor arrived at the parking lot of a bar on Newton Street at approximately 1:00 a.m. and remained in the vehicle to eat the food that they had just purchased. She further testified that at about 1:30 a.m. a man approached the passenger's side of the vehicle and asked for a light. According to Smith, she exited the driver's seat, walked around the vehicle, and offered the man a light. The man produced a firearm and demanded Smith's and Proctor's purses, threatening to shoot them if they failed to comply. Once the man left, Smith and Proctor were able to go into the bar and call the police. Smith described the gun that was used to threaten her in great detail. According to Smith, the parking lot was well lit on one side, but more dimly lit where she had parked the vehicle. Smith described her assailant at being around 5'8" or 5'9", black, and overweight with "fat roll[s] in his head." Smith also indicated that her assailant had a raspy voice.

Smith testified that weeks after the foregoing incident she saw her assailant on two separate occasions. First, Smith saw her assailant while riding the bus. Smith recognized him by sight and by sound because she heard him speak to a nearby bus passenger in his raspy voice. Smith testified that she immediately became "nervous, shaking, [and] sweating" when she saw the man. Smith reported the sighting to the police after she exited the bus. Second, Smith saw her assailant walking down a street near her house. Smith testified that the man greeted her when he walked by such that she heard his raspy voice again. Thereafter, Smith followed the man while calling the police on her cell phone. Police arrested the man, later identified as Singfield, shortly thereafter.

2

Proctor also testified that she and Smith were eating food in a parked vehicle sometime after 1:00 a.m. when a man approached the passenger's side of the vehicle and asked for a light. According to Proctor, she exited the vehicle to give the man a light and he pointed a gun at her. Proctor testified that Smith had exited the driver's side of the vehicle and was in the process of walking around to the passenger's side when the man pointed his gun. The man then demanded their purses, took the purses, and left. Proctor testified that she was in a state of shock during the incident and was focused on her assailant's gun. According to Proctor, she did not think that the parking lot had any lighting. Proctor reported to police that she believed her assailant was black and heavy set. Proctor testified that Smith called her and told her to look outside on the day that Smith saw their assailant walking down the street. Proctor stated that when she saw the man, "I just had this feeling. * * * I just started sweating and I watched him, and I seen him when he walked past * * * and I was, like, oh, my God, that's him."

Detective James Phister testified that he interviewed Smith and Proctor shortly after they were attacked on July 26, 2008. Detective Phister testified that Smith described her assailant as being a black male, 27 to 33 years of age, 5'8" to 5'9" tall, and 250 to 275 pounds with a very raspy voice. He specified that Smith said that the suspect "was so fat that he actually had rolls in his head." As to Proctor, Detective Phister testified that her description of the suspect was "very close" to Smith's description. Specifically, Proctor described the suspect as being a black male, 27 to 33 years of age, 5'7" to 5'9" tall, and 200 to 235 pounds with a raspy voice. Detective Phister testified that Singfield was "slightly taller" than Smith and Proctor described, but otherwise matched their description.

*State v. Singfield*, No. 24576, 2009 WL 3757405 at *1, *4-5 (Ohio Ct. App. Nov. 10, 2009)

("*Singfield II*"), *appeal not allowed*, 922 N.E.2d 971 (Ohio 2010).

PROCEDURAL HISTORY

On October 3, 2008, a grand jury indicted Mr. Singfield on the following charges:

(1)     two counts of aggravated robbery, in violation of Ohio Rev. Code § 2911.01(A)(1), both with firearm specifications, in violation of Ohio Rev. Code § 2941.145;

(2)     two counts of robbery, in violation of Ohio Rev. Code. §§ 2911.01(A)(1), (2), both with firearm specifications;

(3)     having a weapon while under disability, in violation of Ohio Rev. Code §§ 2923.13(A)(2), (3);

3

(4)      theft, in violation of Ohio Rev. Code §§ 2913.02(A)(1), (4); and

(5)      petty theft, in violation of Ohio Rev. Code §§ 2913.02(A)(1), (4).

(ECF #4-1 at PageID 101-04).

The matter proceeded to trial, and on December 15, 2008, the jury found Mr. Singfield guilty on all counts and the related specifications. (*Id.* at PageID 106). On December 16, 2008, the trial court orally sentenced Mr. Singfield, including a prison term for each specification, for a total sentence of fourteen years. (*Id.* at PageID 108). The court merged Counts 3 (robbery), 4 (robbery), 6 (theft), and 7 (petty theft), imposed four years each on Counts 1 and 2 (both, aggravated robbery) with mandatory sentences of three years for each firearm specification served consecutively to each other and to the sentences imposed on Counts 1 and 2, and one year on Count 5 (having a weapon under disability) to be served concurrently to the sentences imposed on Counts 1 and 2, for an aggregate sentence of fourteen years. (*Id.*).

Before the sentence was journalized, Mr. Singfield filed a motion to modify his sentence, arguing that his firearms specifications were allied offenses for which the trial court should not have imposed separate sentences—essentially, arguing that firearm specifications should be served concurrently to each other. (*Id.* at PageID 111-14). On December 19, 2008, the trial court held a full resentencing hearing, and, on December 29, 2008, issued a decision imposing five years imprisonment each on Counts 1 and 2, merged the firearm specifications for a single consecutive three-year term, and imposed a consecutive one-year term for the weapons under disability charge for an aggregate fourteen-year sentence. (*Id.* at PageID 115-16). Finding the counts merged for sentencing, the court again declined to sentence on Counts 3, 4, 6 and 7, with their related firearm specifications. (*Id.*).

4

A.      **Direct Appeal:** *Singfield I*

On January 14, 2009, Mr. Singfield, through counsel, filed a timely notice of appeal to the

Ohio Ninth District Court of Appeals. (*Id.* at PageID 117). His merits brief raised three

assignments of error:

1.      Appellant Singfield's indictment was defective under the Ohio
        Constitution, Article I, Section 10 as the state failed to include a mental
        culpability element for aggravated robbery in the indictment or at trial.

2.      Appellant Singfield's convictions were against the manifest weight of the
        evidence in violation of Section 3(B)(3), Article IV of the Ohio
        Constitution, thus creating a manifest miscarriage of justice because the
        greater weight of the evidence demonstrated that Appellant Singfield did
        not commit the offenses.

3.      The trial court erred when it re-sentenced Appellant Singfield to a greater
        period of incarceration that originally imposed without articulating reasons
        for the increased penalty as required by the due process clause of the
        Fourteenth Amendment and in Violation of Ohio Law.

(*Id.* at PageID 120).

On August 19, 2009, the Ninth District sustained Mr. Singfield's first assignment of error,

rejected the second, and found the third moot. (*Id.* at PageID 204-20). The judgment of the trial

court was affirmed in part and reversed in part, and the case was remanded for further

proceedings. (*Id.*; *see also State v. Singfield*, 918 N.E.2d 187 (Ohio Ct. App. 2009) ("*Singfield I*")). The

State sought an appeal to the Supreme Court of Ohio (ECF #4-1 at PageID 227), which declined

jurisdiction (*id.* at PageID 254).

B.      **Direct Appeal:** *Singfield II*

On August 27, 2009, the State filed a timely motion for reconsideration pursuant to Ohio

App. R. 26(A) requesting the Ninth District reconsider its decision based on the Supreme Court

of Ohio's decision that same day in *State v. Lester*, 916 N.E.2d 1038 (Ohio 2009), which found that

Ohio Rev. Code § 2911.01(A)(1) imposes strict liability. (ECF #4 at PageID 221-22). On October

7, 2009, the Ninth District granted the application for reconsideration, vacated its August 19,

2009 decision, and reassigned the case to the original panel for a new decision. (*Id.* at PageID 223).

On November 10, 2009, the Ninth District issued its decision and journal entry, which rejected all

three assignments of error, including Mr. Singfield's assertion that his sentence was vindictively

increased. (*Id.* at PageID 255-66; *see also Singfield II*, 2009 WL 3757405, at *7.

Through counsel, Mr. Singfield timely appealed to the Supreme Court of Ohio. (ECF #4-1

at PageID 268-87). In his memorandum in support of jurisdiction, Mr. Singfield set forth the

following two propositions of law:

> 1.  Where a court re-sentences a defendant to a greater period of incarceration
>     than it originally imposed, it must articulate reasons for the increased
>     penalty as required by the Due Process Clause of the Fourteenth
>     Amendment.
>
> 2.  Where a defendant's convictions are against the manifest weight of the
>     evidence in violation of Section 3(B)(3), Article IV of the Ohio
>     Constitution, the court must unanimously overturn the convictions and
>     grant a new trial.

(*Id.*). The State filed a waiver of memorandum in response, and on March 10, 2010, the Supreme

Court of Ohio declined jurisdiction and dismissed the matter as not involving any substantial

constitutional question. (*Id.* at PageID 302).

**C.      Reopening Direct Appeal: Ineffective Assistance of Counsel**

On December 29, 2009, Mr. Singfield, pro se, filed an application to reopen his direct

appeal alleging ineffective assistance of appellate counsel for failing to raise the following

argument:

> Appellant was denied due process of law as guaranteed by the Fourteenth
> Amendment to the United States Constitution and Article I, Section 16 of the

> Ohio Constitution when the indictment was defective under Article I, Section 10
> of the Ohio Constitution where the state failed to include a mental culpability
> element in the indictment or at trial.

(ECF #4-1 at PageID 303-11). In a January 5, 2010 judgment entry, the Ninth District denied Mr.

Singfield's application, finding he failed to demonstrate attorney deficiency. (*Id.* at PageID 317).

Mr. Singfield did not seek appellate review in the Supreme Court of Ohio.

### D.    Ohio Criminal Rule 47: *Singfield III*

On April 15, 2010, over fifteen months after he was re-sentenced, Mr. Singfield filed a pro

se motion under Rule 47 of the Ohio Rules of Criminal Procedure, seeking to correct his

sentencing entry on the basis that it was not a final appealable order because it failed to include

the manner and means of his conviction (as required by Rule 32 of the Ohio Rules of Criminal

Procedure) and failed to inform him appropriately of the imposition of post-release control. (ECF

#4 at PageID 320-25). In response, the State conceded the sentencing entry was flawed because it

failed to contain the means by which Mr. Singfield had been convicted—i.e., by jury—and because it

failed to inform Mr. Singfield fully of his post-release control sentence. (*Id.* at PageID 331). The

State contended that the sentence was not void, but that resentencing was required so that a final

order issued. (*Id.* at PageID 332).

Mr. Singfield then filed two motions to dismiss the indictment asserting it lacked the mens

rea element. (*Id.* at PageID 333-36 & 337-42). The State opposed the motions. (*Id.* at PageID 343-

47). Mr. Singfield then filed two more motions to dismiss the indictment. (*Id.* at PageID 348-58 &

359-72). Following a hearing on Mr. Singfield's motions to dismiss, the trial court rejected them as

meritless, and set the matter for "any necessary re-sentencing and the correction of the Post-Release

Control notification . . . ." (*Id.* at PageID 378-80). In an entry filed October 19, 2010, the trial

court re-imposed the aggregate fourteen years in prison and provided notification of the five-year

mandatory term of post-release control. (*Id.* at PageID 381-83).

Mr. Singfield, through counsel, timely appealed to the Ninth District from the trial court's

resentencing entry. (*Id.* at PageID 384-402). In his merit brief, Mr. Singfield raised a single

assignment of error:

> Appellant Singfield's indictment was defective under the Ohio Constitution,
> Article I, Section 10, as the State failed to include a mental culpability element to
> the theft element of Aggravated Robbery, either in the indictment, or at trial.

The State filed a brief in opposition. (*Id.* at PageID 406-17).

On March 28, 2012, the Ninth District held the trial court was without jurisdiction over

any issue other than imposing post-release control, and thus should not have "re-sentenced" Mr.

Singfield regarding his fourteen-year prison term because that sentence was already final. (*Id.* at

PageID 426-31; *see also State v. Singfield*, No. 25670, 2012 WL 1026667 (Ohio Ct. App. Mar. 28,

2012) ("*Singfield III*")). It further held that the scope of the appeal must likewise be limited to post-

release control issues; as such, the court declined to rule on Mr. Singfield's assignment of error

regarding the alleged faulty indictment, finding the issue res judicata. (ECF #4-1 at PageID 426-

31). The Ninth District held Mr. Singfield's fourteen-year sentence remained in effect, as did the

portion of the second resentencing judgment addressing post-release control. (*Id.*). Finally, the

Ninth District remanded the matter to the trial court to issue a *nunc pro tunc* entry to set forth the

manner of conviction—*i.e.*, trial by jury. (*Id.*).

On April 9, 2012, the trial court issued a *nunc pro tunc* entry in accordance with the Ninth

District's decision and entry correcting paragraph one of the trial court's journal entry of

8

December 29, 2008, to include the manner of conviction by jury trial. (*Id.* at PageID 432-33). Mr. Singfield did not seek further appellate review of this order.

Instead, Mr. Singfield filed a motion for *nunc pro tunc* entry arguing that the trial court's December 29, 2012 *nunc pro tunc* entry failed to conform with the Ninth District's order because Mr. Singfield interpreted the order to mean his sentences were to run concurrently only. (*Id.* at PageID 434-37). Nearly six months later, Mr. Singfield filed a motion to compel ruling asking the trial court to rule on his motion for *nunc pro tunc* entry. (*Id.* at PageID 453-54). Explaining that it had already fully complied with the Ninth District's order of remand, the trial court denied Mr. Singfield's motion for *nunc pro tunc* entry in a March 25, 2013 order. (*Id.* at PageID 455).

On April 12, 2013, Mr. Singfield filed a timely notice of appeal to the Ninth District. (*Id.* at PageID 456). Noting that Mr. Singfield had not perfected any appeal from the trial court's April 9, 2012 *nunc pro tunc* order, the Ninth District treated his motion as one for reconsideration and dismissed the appeal for lack of jurisdiction because the order was not a final appealable order. (*Id.* at PageID 456-58).

On November 19, 2013, Mr. Singfield filed in the trial a motion to modify or correct his sentence, again alleging that the trial court's April 2012 *nunc pro tunc* entry failed to correct error in the December 29, 2008 judgment entry; he further requested the trial court remove the consecutive sentences. (*Id.* at PageID 459-67). The State opposed and noted that Mr. Singfield was "trying to manufacture a frivolous appeal." (*Id.* at PageID 474-76). The trial court denied Mr. Singfield's motion on November 22, 2013. (*Id.* at PageID 477).

On December 10, 2013, Mr. Singfield once again attempted to appeal to the Ninth District. (*Id.* at PageID 478-81). Mr. Singfield's appeal was dismissed sua sponte for failing to file his appellate brief timely. (*Id.* at PageID 482).

On August 11, 2014, almost two and a half years after the trial court issued its *nunc pro tunc* entry, Mr. Singfield filed a petition for writ of procedendo in the Ninth District requesting the appellate court order Respondent Judge Tammy O'Brien to issue *a nunc pro tunc* entry "as ordered" by the Ninth District. (*Id.* at PageID 483-86). The State filed a motion to dismiss, to which Mr. Singfield replied. (*Id.* at PageID 498-502 & 503-04). On October 16, 2014, the Ninth District found Mr. Singfield's claim moot and dismissed the petition. (*Id.* at PageID 505-07). Mr. Singfield did not seek further appellate review of this decision by the Supreme Court of Ohio.

### E.    Motion to Correct Sentence: *Singfield IV*

On November 26, 2014, Mr. Singfield filed yet another pro se motion to correct sentence pursuant to Ohio Revised Code § 2929.41. (ECF #4 at PageID 508-10). He alleged his sentences were ordered to be served concurrently, and complained the Ohio Department of Rehabilitation and Corrections, without authority, determined that his sentences be served consecutively. (*Id.*). The State filed a memorandum in response. (*Id.* at PageID 513-14). On January 28, 2015, the trial court denied Mr. Singfield's motion as meritless because in *Singfield II* the court already determined his sentence was not ambiguous and had been correctly imposed for a total of fourteen years. (*Id.* at PageID 515-16).

Mr. Singfield, still proceeding pro se, timely appealed to the Ninth District. (*Id.* at PageID 517-24). In his merit brief, Mr. Singfield presented the following assignment of error: "The court denied Appellant's motion to correct an erroneous and contrary to law, and denied the Appellant

10

due process of law." (*Id.*) (cleaned up). The State filed a brief in response noting that the Ninth District had already determined Mr. Singfield's sentence was correct and the decision in *Singfield II* is the law of the case. (*Id.* at PageID 528-35). Mr. Singfield filed a reply brief. (*Id.* at PageID 539).

On July 15, 2015, the Ninth District held that Mr. Singfield's assignment of error was barred by res judicata; it therefore affirmed the trial court's decision rejecting the latest motion to correct sentence. (*Id.* at PageID 541-46; *see also State v. Singfield*, No. 27680, 2015 WL 4275564 (Ohio Ct. App. July 15, 2015) ("*Singfield IV*")). Mr. Singfield filed an untimely motion for reconsideration, which the Ninth District denied on August 20, 2015. (ECF #4-1 at PageID 547-49).

On September 1, 2015, Mr. Singfield, acting pro se, appealed to the Supreme Court of Ohio. (*Id.* at PageID 550-58). In his memorandum in support of jurisdiction, Mr. Singfield set forth the following seven propositions of law:

1. The state appellate court referenced the incorrect statute in their July 15, 2015 decision.

2. The appellate court cited the appeal of Nov. 19, 2013, instead of the correct appeal of Nov. 26, 2014, thus violating Appellant Singfield's Fourteenth Amendment rights under the U.S. Constitution.

3. The state appellate court already established that Singfield had received concurrent sentences in a prior ruling.

4. Appellant Singfield never received consecutive sentences in a prior ruling, so the appellate court's application of res judicata is a violation of his Fourteenth Amendment rights under the U.S. constitution.

5. The state appellate court did sua sponte apply the two-prong *State v. Kalish/State v. Jenkins* to review whether the trial court's sentence was proper. This violated the Appellant's Fourteenth Amendment right to due process and equal protection under the U.S. Constitution.

11

6.      The Appellant has a void sanction, so res judicata does not apply, and the appellate court's decision violates Singfield's Fourteenth Amendment rights under the U.S. Constitution.

7.      If Appellant were to be barred by res judicata from raising the issue of concurrent sentences, ineffective assistance of trial and appellate counsel would excuse a state procedural default. This violates the Appellant's Sixth and Fourteenth Amendment rights under the U.S. Constitution.

(*Id.*). The State filed a waiver of memorandum in response. (*Id.* at PageID 573). On November 10, 2015, the Supreme Court of Ohio declined to accept jurisdiction. (*Id.* at PageID 574).

**F.      State Habeas Petition:** *Singfield V*

Over two years later—nine years after his original conviction—on January 26, 2018, Mr. Singfield filed a pro se petition for writ of habeas corpus in the Mahoning County Court of Common Pleas alleging he had served his maximum sentence and was being illegally detained by the Warden of the Northeast Ohio Correctional Center. (*Id.* at PageID 575-80). He based his argument on his continued claim that his sentencing entry was ambiguous and thus, his sentences should run concurrently, not consecutively. (*Id.*). The State moved to dismiss the petition. (*Id.* at PageID 581-92). On March 23, 2018, the Mahoning County Court of Common Pleas granted the State's motion and dismissed the petition with prejudice. (*Id.* at PageID 593).

Mr. Singfield, pro se, timely filed a notice of appeal to the Seventh District Court of Appeals. (*Id.* at PageID 594-605). In his merit brief, Mr. Singfield raised the following assignment of error:

The trial [sic] erred as a matter of law when it dismissed Appellant's petition with prejudice.

First Issue Presented for Review: Can the Trial Court dismiss a petition for a writ of habeas corpus with prejudice for failure to comply with the statutory requirements of R.C. § 2725.04 (D) and R.C. § 2969.25?

12

> Second Issue Presented for Review: Did the alleged existence of adequate alternative remedies warrant dismissal of the petition?
>
> Third Issue Presented for Review: Does the doctrine of res judicata support the dismissal of the of the [sic] petition?
>
> Fourth Issue Presented for Review: Does the respondent's argument that appellant's sentence has not expired warrant dismissal of the petition with prejudice?
>
> Fifth Issue Presented for Review: Can a court dismiss a complaint on a motion made pursuant to Civ. R. 12(B)(6), dismiss the complaint with prejudice?

(*Id.*). The State filed a brief in response. (*Id.* at PageID 606-22). On April 29, 2019, the Seventh District found Mr. Singfield's second and fourth issues lacked merit and his first, third and fifth issues were moot; the judgment of the trial court dismissing the petition with prejudice was thus affirmed. (*Id.* at PageID 623-32; *see also Singfield v. LaRose*, No. 18 MA 0047, 2019 WL 1976020 (Ohio Ct. App. Apr. 29, 2019) ("*Singfield V*")).

On June 11, 2019, Mr. Singfield, through counsel, filed a notice of appeal to the Supreme Court of Ohio. (*Id.* at PageID 633-46). In his memorandum in support of jurisdiction, Mr. Singfield set forth two propositions of law:

> 1.  The Seventh District Court of Appeals, in affirming the trial court's decision, ignored controlling precedent from this Court.
>
> 2.  Appellant's constitutional rights to liberty and to equal protection of the law are violated where he continues to be incarcerated after the expiration of his sentence.

(*Id.*). On August 20, 2019, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. (*Id.* at PageID 647).

13

FEDERAL HABEAS PETITION

Filed through counsel, Mr. Singfield's Petition sets forth two grounds for relief, as follows:

**GROUND ONE:** Singfield was denied due process as guaranteed by the 5th and 14th Amendments to the United States Constitution when the trial court dismissed his habeas petition with prejudice without merits hearing.

Supporting Facts: Singfield filed a state court habeas action pro se. His petition failed to meet the technical requirements for the [sic] because he erroneously attached his sentencing entry instead of commitment papers. He did not know what the meaning of the term commitment papers was, and reasonably concluded those must be his sentencing entries since that is what put him in jail. The trial court dismissed his petition with prejudice for this technical error. It never heard the merits. Such dismissal with prejudice is contrary to Ohio law as argued in the attached Memorandum; yet, the Seventh District Court of Appeals and the Ohio Supreme Court did not reverse.

**GROUND TWO:** Singfield is being denied equal protection of the law where he continues to be incarcerated after the expiration of his sentence when others in similar position are released.

Supporting Facts: Singfield was sentenced to 8 years in prison. The Ninth District Court of Appeals recognized as much when it limited the trial court to correct procedural and technical errors in resentencing and left Singfield's concurrent sentences intact [sic]. The trial court then changed its journal by submitting a second sentencing entry reflecting a sentence of 14 years. As argued in the attached Memorandum, the trial court had no authority to do that. Singfield's sentence is 8 years. That sentence has expired. But Singfield is still incarcerated.

(ECF #1 at PageID 5, 7). Mr. Singfield requests that the Court "find his continued incarceration by the State of Ohio to be contrary to law and Order his immediate release." (*Id.* at PageID 15; *see also id.* at PageID 24).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 governs Mr. Singfield's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a

"formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker,* 501 U.S. 797, 805 (1991). The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams*, 529 U.S. at 412. A state court does not act contrary to clearly

established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g.,* *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam). A state-court decision is an unreasonable determination of the facts only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). A petitioner bears the burden to rebut the state court's factual findings "by clear and convincing evidence." § 2254(e)(1). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The standard is intended to be difficult to meet because habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Id.* at 102-03 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

### Procedural Barriers to Federal Habeas Review

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers—including the timeliness of the filing of the petition, exhaustion of state remedies, and procedural default—limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001).

**Timeliness Under the AEDPA.** Pursuant to 28 U.S.C. § 2244(d), a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. *See also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the

one-year limitation period in § 2244(d)(1) meets the interest in the finality of state court judgments). The statute of limitations is not jurisdictional; rather, it is an affirmative defense that the respondent must raise in the first responsive pleading. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see also Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Though not jurisdictional, when the respondent asserts it and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—*i.e.*, equitable tolling and actual innocence—had not been satisfied).

The AEDPA's statute of limitations period runs from the latest of four dates:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**Exhaustion of Available State Court Remedies.** A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such state process ineffective to protect the rights of the petitioner. *Id.* at § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest

17

court in the state where the petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default.** There are two avenues by which a petitioner's claim may be procedurally defaulted. First, procedural default of a claim occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted if the petitioner fails to raise it in state court and pursue that claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be

18

considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).

The Supreme Court has stated that "in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas corpus review of a claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray,* 477 U.S. at 496.

A showing of cause requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation marks omitted)). There is no prejudice

where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence, however, does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman v. Thompson*, 501 U.S. at 752-55; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A "fundamental miscarriage of justice" occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A valid actual innocence claim must be supported by new evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Id.* at 315. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

## Discussion

As noted above, Mr. Singfield's Petition sets forth two grounds for relief. I conclude Ground One is non-cognizable on federal habeas review and Ground Two is both untimely under the AEDPA and is procedurally defaulted; additionally, neither ground has merit.

A.      Ground One

In Ground One, Mr. Singfield argues he was denied due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution when the trial court dismissed his habeas petition with prejudice without a hearing on the merits. (ECF #1 at PageID 5). The State argues this claim is non-cognizable on federal habeas review because it addresses the state courts' interpretation of state law. (ECF #4 at PageID 70).

Ohio's habeas statute, Revised Code § 2725.05, states "[i]f it appears that a person alleged to be restrained of his liberty is in the custody . . . by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to . . . render the judgment . . . the writ of habeas corpus shall not be allowed." The statute also sets forth various procedural requirements of filing a petition:

> Application for the writ of habeas corpus shall be by petition, signed and verified either by the party for whose relief it is intended, or by some person for him, and shall specify . . . A copy of the commitment or cause of detention of such person shall be exhibited, if it can be procured without impairing the efficiency of the remedy; or if the imprisonment or detention is without legal authority, such fact must appear.

Ohio Rev. Code § 2725.04.

When filing his state habeas petition with the Mahoning County Court of Common Pleas, Mr. Singfield, proceeding pro se, mistakenly attached his sentencing entries rather than commitment papers as required by the statute. (ECF #1 at PageID 22-23). He now claims that his Fifth and Fourteenth Amendment rights were violated when the trial court dismissed the petition with prejudice based on procedural grounds. (*Id.*)

The Mahoning County court gave no substantive explanation for why it found the State's motion to dismiss the habeas petition well-taken. (ECF #4-1 at PageID 593) ("Case called this

21

23nd [*sic*] day of March, 2018 upon Respondent's Motion to Dismiss. The Court finds Respondent's motion to be well-taken. Respondent's Motion to Dismiss is sustained and the State Habeas Corpus Complaint filed by the Petitioner hereby is dismissed with prejudice."). The State's motion argued the failure to attach commitment papers, existence of adequate alternative remedies, res judicata, maximum sentence not yet expired, and failure to comply with Ohio Rev. Code § 2969.25 all warranted dismissal. (*Id.* at PageID 581-92). Mr. Singfield argues in his petition that "all such technical failures are grounds for dismissal, but dismissal without prejudice. Petitioner should have been permitted to correct his error and resubmit his petition so that the merits could be reached." (ECF #1 at PageID 23). However, it is not clear why the trial court found the motion to dismiss well-taken on the merits. It could have been the result of any argument or combination of arguments in the State's motion to dismiss.

Initially, habeas is not a vehicle for federal courts to review a state court's application of its own laws. It is well-settled that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotations omitted). A federal habeas court may not reexamine state court determinations based solely in state law. *Bradshaw v. Richey*, 546 U.S. 74, 76, (2005). Rather, a state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Id.* Thus, federal courts may not issue a writ of habeas corpus on the basis of a perceived error of state law but are limited only to deciding whether a petitioner's conviction violated the Constitution, laws, or treaties of the United States. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also* 28 U.S.C. § 2254(a). A claimed error of state law may nevertheless serve as a basis for federal habeas relief if the ruling was so fundamentally unfair as to violate due process. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

Further, the Sixth Circuit has long held that habeas corpus does not provide a remedy for inadequacies in state court postconviction processes. Postconviction state collateral review is not a constitutional right, even in capital cases. *Murray v. Giarratano*, 492 U.S. 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Estelle v. Dorrough*, 420 U.S. 534, 536 (1975); *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986) (claims of denial of due process and equal protection in collateral proceedings not cognizable in federal habeas because not constitutionally mandated); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001); *Zuern v. Tate*, 101 F. Supp. 2d 948 (S.D. Ohio 2000), *aff'd*, 336 F.3d 478 (6th Cir. 2003).

Even though the Mahoning County Common Pleas Court dismissed the state habeas petition without substantive explanation, the Seventh District *did* review the merits of the underlying claim and determined they were insufficient under Ohio's habeas statute to justify issuing a writ. In affirming the dismissal of Mr. Singfield's state habeas petition with prejudice, the Seventh District stated:

> Appellant's sentencing challenge is not jurisdictional. Non-jurisdictional habeas challenges may only be countenanced where no adequate remedy at law exists. Appellant has already raised the identical claim in his motion to correct sentence, and could have raised the issue in his direct appeal. Finally, despite the Singfield III Court's use of the phrase "concurrent sentences," **it is clear from the aggregate sentence memorialized in the December 19th sentencing entry that the trial court imposed the sentences for each of Appellant's three substantive convictions to be served consecutively to one another.**

*Singfield V*, 2019 WL 1976020, at *4 (emphasis added); *see also Appenzeller v. Miller*, 996 N.E.2d 919, 921 (Ohio 2013) ("Habeas corpus will lie only to challenge the jurisdiction of the sentencing court."); *Dunkle v. Dept. of Rehab. & Corr.*, 71 N.E.3d 1098, 1100 (Ohio 2017) (per curiam) ("[S]entencing errors are not jurisdictional and thus are not cognizable in habeas corpus.") (citing *State ex rel. O'Neal v. Bunting*, 18 N.E.3d 430, 432).

"The few situations in which habeas corpus may lie to correct a nonjurisdictional error are those in which there is no adequate remedy at law." *Dunkle*, 71 N.E.3d at 1100 (quoting *Appenzeller*, 996 N.E.2d at 921). The availability of adequate remedies in the ordinary course of the law, even if those remedies were not sought or were unsuccessful, precludes the issuance of a writ of habeas corpus in Ohio. *Id.* (citing *O'Neal*, 18 N.E.3d at 432). Mr. Singfield's state petition did not challenge jurisdiction, nor do I see any state interference with the availability of adequate remedies afforded to Mr. Singfield. Although his appeal was unsuccessful, he was afforded it nonetheless.

For these reasons, I recommend the District Court dismiss Ground One of Mr. Singfield's Ground for Relief.

**B.      Ground Two**

In Ground Two, Mr. Singfield argues he was denied equal protection of the law where he continues to be incarcerated after the expiration of his sentence when others in similar position are released. In short, Mr. Singfield reads his sentencing order as ambiguous and, because ambiguity must be read in favor of the defendant, he believes his sentence is eight years rather than fourteen.

**1.      Statute of Limitations**

As a preliminary matter, the State argues that the Mr. Singfield's claim is time-barred. As discussed above, under 28 U.S.C. § 2244(d)(1), the limitations period begins to run from the latest of four events:

> (A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

24

(B)      the date on which the impediment to filing an application created by State
         action in violation of the Constitution or laws of the United States is
         removed, if the applicant was prevented from filing by such State action;

(C)      the date on which the constitutional right asserted was initially recognized
         by the Supreme Court, if the right has been newly recognized by the
         Supreme Court and made retroactively applicable to cases on collateral
         review; or

(D)      the date on which the factual predicate of the claim or claims presented
         could have been discovered through the exercise of due diligence.

Mr. Singfield argues entitlement to a later start date because the alleged wrong did not accrue until

after he served the eight years to which he was properly sentenced, and he could not have filed in

advance of the Supreme Court of Ohio's decision not to hear the appeal of the denial of his state

habeas petition in the summer of 2019. (ECF #1 at PageID 13). The State counters that if Mr.

Singfield was not aware of his claimed sentencing error until he was not released after serving eight

years, he would not "relentlessly litigate and re-litigate this meritless sentencing issue before the

Ohio courts for the past seven years." (ECF #4 at PageID 79). The State argues that because Mr.

Singfield raised his current sentencing issue in state court at least as early as October 22, 2012, he

cannot now successfully claim any other later AEDPA statute of limitations start date. (*Id.*). I find

the State's argument persuasive and recommend the District Court dismiss Ground Two as

untimely.

Arguably, the factual predicate of the claim in Ground Two could have been discovered

through the exercise of due diligence on December 29, 2008, the date Mr. Singfield's allegedly

ambiguous sentencing entry was journalized. If a defect does exist with the sentencing entry such

that Mr. Singfield would be subject only to an eight-year sentence, that alleged defect could (and

should) have been discovered through the exercise of reasonable due diligence by simply reading it.

In other words, if Mr. Singfield's interpretation of the entry is true, one need only read the entry

to determine that the fourteen-year aggregate sentence does not match the eight years imposed.

Mr. Singfield first raised the issue in his October 22, 2012 motion to the trial court for a *nunc pro*

*tunc* entry to reflect concurrent sentences. (ECF #4-1 at PageID 435-36). At the very least, this

establishes that Mr. Singfield was aware as early as October 2012 of the issue he now raises. To

argue that Mr. Singfield could not have discovered the sentencing court's alleged error—*i.e.*,

imposition of an aggregate fourteen-year sentence—until the Ohio Department of Rehabilitation

and Correction failed to release him after eight years is, at best, disingenuous.

### a.     Statutory Tolling

In his Petition, Mr. Singfield argued "the time spent exhausting State Court remedies does

not count against the limitations period. Additionally, the wrong here did not accrue until after

Mr. Singfield served the 8 years to which he was properly sentenced and his State Court petition

was timely; thus, Mr. Singfield could not have filed in advance of the Supreme Court of Ohio's

decision not to hear the appeal of the denial of his habeas petition in the summer of 2019." (ECF

#1 at PageID 13).

Section 2244(d)(2) states: "[t]he time during which a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim pending

shall not be counted toward any period of limitation under this subsection." 28 U.S.C.

§ 2244(d)(2). "An application is pending as long as the ordinary state collateral review process is 'in

continuance'—i.e., 'until the completion of' that process. In other words, until the application has

achieved final resolution through the State's post-conviction procedures, by definition it remains

'pending.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002). "Collateral review" in § 2244(d)(2) means

judicial review of a judgment in a proceeding that is not part of direct review. *Wall v. Kholi*, 562 U.S. 545, 547 (2011).

Assuming the more generous start date of October 22, 2012, the claim in Ground Two of this federal habeas petition was statutorily tolled from that date to the date the appellate court denied the appeal, April 30, 2013. Thereafter, 203 days of the AEDPA one-year limitations period passed until Mr. Singfield filed his November 19, 2013 post-conviction motion seeking the modification or correction of his sentence. Resolution of the claim occurred October 16, 2014, when the Ninth District dismissed the case after Mr. Singfield failed to file his brief. Thus, the one-year period of limitations resumed on October 17, 2014, with 162 days remaining.

Mr. Singfield's Petition for Writ of Procedendo (ECF #4-1 at PageID 483), filed August 11, 2014, does not act to toll the period of limitations.[1] The period of limitations then ran for a period of 40 days from October 17, 2014, to November 26, 2014, when Mr. Singfield filed another post-conviction motion to correct his sentence. The matter was resolved when the Supreme Court of Ohio declined to accept jurisdiction of the appeal on November 10, 2015. The one-year limitations period started to run again on November 11, 2015, with 122 days remaining. The limitations period ran until its expiration on March 12, 2016.

While the running of the limitations period may be tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to

---

[1]     To qualify for statutory tolling under § 2241(d)(2), the application must seek collateral review of the underlying conviction or sentence. *See George v. Gansheimer*, No. 1:09-CV-00874, 2010 WL 547482, at *12 (N.D. Ohio Apr. 27, 2010). By its nature, the writ of procedendo is not a challenge to the underlying conviction or sentence; instead, it seeks an order from a court of superior jurisdiction to one of inferior jurisdiction to proceed to judgment in a pending action. *See State ex rel. Rodak v. Betleski*, 819 N.E.2d 703, 706 (Ohio 2004). The writ orders the lower court to issue judgment; it does not attempt to determine what the judgment should be. *See id.*

the pertinent judgment or claims under 28 U.S.C. § 2244(d)(2), this statutory tolling provision does not revive the limitations period—it can only serve to pause a clock that has not yet expired. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir.), *cert. denied*, 543 U.S. 865 (2004); *Searcy v. Carter*, 246 F.3d 515 (6th Cir.), *cert. denied*, 534 U.S. 905 (2001). Once the limitations period has expired, state collateral review proceedings no longer serve to avoid the statute of limitations bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citing *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)); *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003) (citing *Webster v. Moore*, 199 F.3d 1256 (11th Cir. 2000)). Thus, even with the application of statutory tolling, Mr. Singfield's federal habeas petition, filed October 31, 2019, is untimely by at least three years.

  **b.**  **Equitable Tolling**

   The AEDPA's statute of limitations is not "an inflexible rule requiring dismissal whenever its clock has run" and is "subject to equitable tolling." *Holland v. Florida*, 560 U.S. 631, 645-46, 649 (2010) (internal quotations omitted). In *Holland*, the Supreme Court held that a habeas petitioner "is entitled to equitable tolling only if he shows (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 391. In *Schlup v. Delo*, 513 U.S. 298 (1995), the Court further held that a petitioner who asserts a credible claim of actual innocence can "avoid a procedural bar to the consideration of the merits of his constitutional claims." *Id.* at 327.

   Based on *Schlup*, the Sixth Circuit has held a petitioner who presents a credible claim of actual innocence is entitled to equitable tolling of the AEDPA's statute of limitations. *Souter v. Jones,* 395 F.3d 577, 601 (6th Cir. 2005) ("[W]here an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty

28

beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims."). The exception is rare and only applied in extraordinary cases. *See Schlup*, 513 U.S. at 321; *see also Souter*, 395 F.3d at 590. Mr. Singfield does not make any argument that he is entitled to equitable tolling. Therefore, the claim under Ground Two is untimely in accordance with the AEDPA.

### 2.    Procedural Default

The State also argues that in failing to bring the equal protection claim set forth in his Ground Two in his direct appeal before the state court, Mr. Singfield did not fairly present the issue in state courts and is subject to res judicata for failure to challenge the sentencing entry as ambiguous on direct review. (ECF #4 at PageID 89). Mr. Singfield counters that whether his pro se filings on direct appeal "failed to use the magic words 'equal protection'" is of no consequence to whether he substantively raised the issue. (ECF #7 at PageID 695). He maintains he did not present an equal protection argument in his direct appeals because they occurred prior to the date on which he asserts his incarceration became unlawful. (*Id.*) Further, Mr. Singfield argues there is no other way to interpret his argument that his equal protection right—that people are released when their sentences expire—is being denied. (*Id*).

As discussed above, before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state court remedies by fairly presenting all constitutional claims to the highest state court and to all appropriate state courts prior to that. 28 U.S.C. § 2254 (b), (c). In Ohio, this includes direct and delayed appeal to the Ohio Court of Appeals and the Supreme Court of Ohio. *Allen v. Perini*, 424 F.2d 134, 140 (6th Cir. 1970); *Mackey v. Koloski*, 413 F.2d 1019 (6th Cir. 1969). To fairly present habeas claims to the state

29

courts, such claims must be presented at the first available opportunity. *Rust*, 17 F.3d at 160-61.

"General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present'

claims that specific constitutional rights were violated." *McMeans v. Brigano*, 228 F.3d 674, 681

(6th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001). A claim is fairly presented when both the factual

and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d

791, 798 (6th Cir. 2000).

Mr. Singfield's direct appeal challenged only one aspect of his sentencing order, in that the

trial court erred when it re-sentenced him to a greater period of incarceration than originally

imposed. (ECF #4-1 at PageID 120). In fact, in support of this argument, Mr. Singfield asserted

that "[t]he only reason the trial judge gave at the sentencing hearing for increasing Mr. Singfield's

sentence **was her desire to impose a sentence total of fourteen years**." (*Id.* at PageID 150)

(emphasis added). He did not present any argument regarding any ambiguity in the number of

years his sentencing order imposed. Again, because the alleged defect in the sentencing entry could

have been discovered the date it was filed in 2008, although it was presented in later post-

conviction proceedings, it was not presented "at the first available opportunity" on direct review as

required by the Sixth Circuit. *Rust*, 17 F.3d at 160-61. In Ohio, claims that could have been

brought on direct appeal but were not are barred by the doctrine of res judicata. *Hanna v. Ishee*,

694 F.3d 596, 613-14 (6th Cir. 2012), *cert. denied*, 571 U.S. 844 (2013).

Therefore, Mr. Singfield's Ground Two is procedurally defaulted because he can no longer

present this unexhausted claim in Ohio courts because it is barred by res judicata. *See Singfield IV*,

2015 WL 4275564, at *3 (holding that Mr. Singfield's argument is barred by res judicata, and

stating: "[h]ere, Mr. Singfield could have raised the trial court's alleged error involving the

sentencing entry on direct appeal. The alleged error that Mr. Singfield asserts occurred within the trial court's sentencing entry from 2008, and was thus patent on the face of the record. Mr. Singfield previously appealed to this Court on two other occasions in this matter and could have raised his challenge to the clarity of the trial court's sentencing entry then. However, he failed to do so.").

### 3.  Mr. Singfield's sentencing order is not ambiguous

Even if Mr. Singfield had timely filed and fairly presented his Ground Two to the state courts, it would still fail on the merits. To reiterate, Mr. Singfield's Ground Two for federal habeas relief involves the perceived ambiguity of his sentencing entry. In short, Mr. Singfield reads his sentencing order as ambiguous and, because ambiguity must be read in favor of the defendant, believes his sentence is eight years rather than fourteen.

The December 19, 2008 journal entry states as follows:

IT IS THEREFORE ORDERED AND ADJUDGED BY THIS COURT that the Defendant, PHILLIP A. SINGFIELD, be committed to the OHIO DEPARTMENT OF REHABILITATION AND CORRECTION for an actual three (3) year mandatory sentence for FIREARM SPECIFICATION 1 TO COUNT 1; for a definite term of Five (5) years, which is not a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of AGGRAVATED ROBBERY, Ohio Revised Code Section 2911.01(A)(1), a felony of the first (1st) degree; for an actual Three (3) year mandatory sentence for FIREARM SPECIFICATION 1 TO COUNT 2; for a definite term of Five (5) years, which is not a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of AGGRAVATED ROBBERY, Ohio Revised Code Section 2911.01(A)(1), a felony of the first (1st) degree; for a definite term of One (1) year, which is not a mandatory term pursuant to O.R.C. 2929.13(F), 2929.14(D)(3), or 2925.01, for punishment of the crime of HAVING WEAPONS WHILE UNDER DISABILITY, Ohio Revised Code Section 2923.13(A)(2)/(3), a felony of the third (3rd) degree, and that the said Defendant pay the costs of this prosecution...

IT IS FURTHER ORDERED that the Three (3) year mandatory sentences imposed in this case for firearm specifications be served CONCURRENTLY with each other

31

but shall be served CONSECUTIVELY with the sentences imposed in Counts 1, 2, and 5.

IT IS FURTHER ORDERED that the Defendant is to serve a total of Fourteen (14) years in the Ohio Department of Rehabilitation and Correction.

(ECF #4-1 at PageID 115-16). The sentencing order is not ambiguous. Indeed, the trial court explicitly stated that Mr. Singfield was to be incarcerated for a total of fourteen years.

I therefore recommend the District Court dismiss Mr. Singfield's Ground Two as untimely, or in the alternative, as procedurally defaulted.

CERTIFICATE OF APPEALABILITY

A certificate of appealability (COA) may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing § 2254 Cases*, Rule 11(a). When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if petitioner shows that jurists of reason would find it debatable whether petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

I recommend the District Court deny Mr. Singfield a COA. As to Ground One, I find the claim is not cognizable, and therefore Mr. Singfield has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). As to Ground Two, no reasonable jurist would find it debatable that the claims raised are both untimely and procedurally defaulted. *See Grayson v. Grayson*, No. 01-71813, 185 F. Supp. 2d 747, 753 (E.D. Mich. Jan. 3, 2002). Therefore, neither ground warrants the issuance of a COA.

CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend the Petition be

**DISMISSED**. I further recommend the District Court **DENY** Mr. Singfield a certificate of

appealability.

Dated: December 29, 2022

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

<u>Objections, Review, and Appeal</u>

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.*, **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'"** *Overholt v. Green*, **No. 1:17-CV-00186, 2018 WL 3018175, at \*2 (W.D. Ky. June 15, 2018) (quoting** *Howard*, **932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice.** *See United States v. Wandahsega*, **924 F.3d 868, 878-79 (6th Cir. 2019).**